**UNITED STATES to Use and Benefit of TAY-LOR v. FIDELITY & DEPOSIT CO. OF MARYLAND (HAVEMANN, Intervener).**
No. 686.

District Court, D. Idaho, Eastern Division.
Jan. 8, 1930.

Richards & Haga, of Boise, Idaho, and John H. Padgham, of Salmon, Idaho, for intervener.

Frank T. Wyman, of Boise, Idaho, and Cheney, Jensen & Marr, of Salt Lake City, Utah, for defendant.

CAVANAH, District Judge.

This is an action brought against a surety on its bond given under an act of Congress for the benefit of those furnishing labor and materials on public works of the United States. The action as to the claim of plaintiff, Taylor, was dismissed, but it is continued upon the complaint in intervention of Havemann, who alleges that he furnished goods, wares, merchandise, and materials for the performance of the work to be done under the contract, covering section 3, Salmon-Montana Line National Forest Road, between station 1002—50 and station 1340—00. The statute (40 USCA § 270) provides that any contractor upon public work of the United States must give a bond "with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract." The bond provides that there shall be no liability if the contractor "shall well and truly pay all and every person furnishing material or performing labor in and about the improvement of said highway all and every sum or sums of money due him, them or any of them, for all such labor and materials for which the contractor is liable."

The statute and similar bonds have been before the federal courts often for interpretation, and they have been given a liberal construction in order to effectuate the purpose of Congress as declared in the act, and to protect those who furnish labor or materials in the prosecution of public works. Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; U. S., for Use of Hill, v. American Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437. And in so

interpreting the act, and a bond issued thereunder, the Supreme Court, in the case of Brogan v. National Surety Company, 246 U. S. 257, 38 S. Ct. 250, 251, 62 L. Ed. 703, L. R. A. 1918D, 776, has taken into consideration special circumstances under which the supplies were furnished, and has not limited the application of the act to labor and materials directly incorporated into the public work. Brogan v. National Surety Co., supra; Title Guaranty & Trust Co. v. Crane Co., 219 U. S. 24, 31 S. Ct. 140, 55 L. Ed. 72; U. S. Fidelity & Guaranty Company v. U. S. ex rel. Bartlett, 231 U. S. 237, 34 S. Ct. 88, 58 L. Ed. 200. In the Brogan Case, the court said that "the Standard Contracting Company undertook to deepen the channel in a portion of St. Mary's river, Michigan, located 'in a comparative wilderness at some distance from any settlement. There were no hotels or boarding houses' and the contractor 'was compelled to provide board and lodging for its laborers.' * * * The Circuit Court of Appeals [228 F. 577, L. R. A. 1917A, 336] deemed immaterial the special circumstances under which the supplies were furnished and the findings of fact by the trial court that they were necessary to and wholly consumed in the prosecution of the work provided for in the contract and bond. In our opinion these facts are not only material, but decisive."

Approaching then a consideration of the present case, with the views in mind as expressed by the Supreme Court, the evidence shows that section 3 of the highway, covered by the contract and bond, is located in the mountains at some distance from any place where supplies, blacksmithing and repairs to equipment, or facilities for boarding the men, could be secured, and that they had to be transported a long distance after the construction of a road on the mountainside where the work was being done. In that regard the situation is in some respects similar to those in the Brogan Case. Intervener now seeks a recovery of $2,805.41 of his alleged claim of $2,967.17, after allowing certain credits admitted by him, upon the contention that materials to that amount were furnished to the subcontractor of Craven & Co. The defendant surety company admits that intervener is entitled to recover the sum of $400, leaving then $2,405.41 of intervener's claim in dispute.

Upon the evidence there are two disputed questions involved: First, are the items of such a character as to come within the meaning of the word "materials," and the term "in the improving of the highway", used in the bond, and under the statute "in the prosecution of the work?" And, second, were they used in the improving of the highway and in the prosecution of the work provided for in the contract? In determining what items were used in the improving of the highway and in the prosecution of the work under the statute and contract, we are confronted with the broad interpretation placed upon the statute by the Supreme Court and the consideration given by that court of special circumstances under which the supplies were furnished.

The work here was located some distance from any settlement, and there were no boarding houses, making it necessary for the subcontractors to provide board and lodging for their laborers. Groceries and provisions, feed for horses, blacksmithing equipment, coal, grease, gas, oil, commissary and office equipment, were used in the prosecution of the work, and freight paid. A summary of the items becomes necessary in order to determine what are allowable and what are not under the statute and bond. For convenience, reference will be made to plaintiff's exhibits, which contain the different classes of items relied upon by him.

Plaintiff's Exhibit No. 3 covers horse feed used on the work and freight on same. It would seem that these items are allowable, after deducting $91.41, materials furnished Russell & Cole, and $21.60 hay not used, leaving a balance of $1,013.12.

Plaintiff's Exhibit No. 5 covers equipment for horses used on the work, such as horseshoes, horseshoe nails, calks, and clevises. The items allowed, as shown in this exhibit, and which I think are to be considered as coming within the bond, are:

| Date | Item | Amount |
|---|---|---|
| 8/28 | 10# No. 7 horseshoe nails | $3.00 |
| | 1 keg No. 4 horseshoes | 12.50 |
| | 1 keg No. 5 horseshoes | 12.50 |
| | 15# No. 4 calks for horseshoes | 2.62 |
| | 15# No. 5 calks for horseshoes | 2.62 |
| 10/12 | 25# No. 4 calks for horseshoes | 4.38 |
| | 12# No. 5 calks for horseshoes | 2.10 |
| 10/24 | 5# horseshoe nails | 1.50 |
| 10/19 | 5# " " | 1.50 |
| | 25# No. 5 horseshoe calks | 4.38 |
| | 1 keg horseshoes | 12.50 |
| 9/16 | 12 large clevises | 7.20 |

Total allowed under this heading.....$66.80

The remaining items thereof are disallowed, for I do not think that harness, chains, traces, and equipment for horses are proper charges under the bond. These items are as follows:

| Date | Item | Amount |
|---|---|---|
| 8/20 | 6 No. 20 horse collar pads | $ 5.10 |
| | 6 No. 22 horse collar pads | 5.10 |
| | 100 ft. ½'' rope for horses | 3.25 |
| | 1 pr. harness lines | 7.00 |
| | 6 single trees | 10.50 |
| 9/8 | 2 doz. 1'' harness snaps | 2.00 |
| 9/10 | 3 pr. Concord harness hames | 11.25 |
| | 6 heavy single trees | 15.00 |
| | 1 horse collar | 5.75 |
| | 100 ft. ½'' rope for horses | 2.75 |
| 9/16 | 1 pr. 24 ft. harness lines | 9.00 |
| 9/18 | 8 center clips for single trees | 2.80 |
| 9/28 | 50# 5/8'' rope for horses | 2.70 |
| | 2 doz. 1'' snaps for harness | 2.00 |
| 10/3 | 2 pr. harness lines | 17.00 |
| 10/5 | 1 21'' horse collar | 7.50 |
| | 1 22'' horse collar | 7.75 |
| 10/5 | 12 sweat pads | 10.20 |
| 10/24 | 21# rope | 7.35 |
| | 2 sets harness | 80.00 |
| | 6 pr. chain traces | 13.50 |
| | express paid on same | 10.00 |
| 10/19 | 1 set 24' harness lines | 9.00 |
| | 3 No. 22 horse collar pads | 2.55 |
| | 3 No. 24 horse collar pads | 2.70 |
| | 200 ft. ½'' halter rope | 6.40 |

Plaintiff's Exhibit No. 6 covers camp house equipment, consisting of furnishing a place for lodging of the laborers at the camp, and comes within the holding in the Brogan Case and within the terms of the bond, after deducting a total of $4.95 for one heater, $4, one damper, 20 cents, and three joints stovepipe, 75 cents, which were furnished Russell & Cole, leaving a balance allowed of $458.87.

Plaintiff's Exhibit No. 7, consisting of kitchen and mess hall equipment, comes within the same rule applicable to the items in Exhibit No. 6, and are allowed, excepting the items of 10 cents and 5 cents for forks and four cups, 40 cents, which were furnished to Russell & Cole, leaving a balance allowed $171.57.

Plaintiff's Exhibit No. 8, consisting of blacksmith coal, axle grease, welding compound, freight on gas and oil, and freight on merchandise used in the prosecution of the work. These items also come within the bond, and freight and haulage charges are also recognized as proper charges in Illinois Surety Co. v. John Davis Co., supra, and therefore should be allowed in the sum of $57.17.

Plaintiff's Exhibit No. 9 covers miscellaneous tools and equipment, and contains a great variety of items that appear to be facilities for doing the work and not all materials used in the work. I do not think the rule laid down in the Brogan and other cases called to my attention should be extended so as to apply to materials of the character not allowed under the evidence, as they were equipment and facilities for doing the work and could be applied to any other work. It would therefore be unfair to require the surety to pay for those disallowed, and at the same time allow the contractor to retain them to be used or disposed of by him. To so hold would include equipment of every nature.

The items allowed as shown in this exhibit are such as were used and consumed in blacksmithing and in the prosecution of the work, and are as follows:

| Date | Item | Amount |
|---|---|---|
| 8/28 | 1 doz. stone bolts | $ .10 |
| | 20# 30 penny nails | 1.40 |
| | 1 5/8 inch bit | .60 |
| | 1 ½'' bit | .45 |
| | 1 3/8 inch bit | .40 |
| | 20# 30 penny spikes | 1.40 |
| | 5 doz. bolts for fresno | 2.60 |
| | 2# copper rivets | 1.00 |
| | 1 pr. blacksmith tongs | 1.50 |
| | 1 grindstone | 15.00 |
| | 2 2# blacksmith hammers | 5.50 |
| 9/8 | 1 5/8x10 bolt | .10 |
| | 1 repair link | .15 |
| 9/9 | 50# 1¼ drill steel | 10.00 |
| | 60 ft. 1'' drill steel | 30.60 |
| | bolts | .20 |
| 9/16 | 2 bars 5/8x2½ for retiring wagon wheels | 15.30 |
| | 1 rasp for horseshoeing | .90 |
| | 13# 3/8 round iron | 1.67 |
| | 2 bars each 1-3/4-4/8-½ in. round iron, 188# | 16.92 |
| | 1 bar 3/8x1½ for retiring wagon wheels | 2.25 |
| 9/18 | 7 ¾# leather | 4.35 |
| | 1 counter sink bit | .35 |
| 9/23 | 18 ½x1½ fresno blades | .35 |
| 9/29 | 2-5 ft. fresno blades | 20.00 |
| | 20# rivets | 4.00 |
| | 1 share for Deere Road plow | 10.25 |
| 10/2 | 2 doz. ½x4 machine bolts | 1.20 |
| | 2 doz. 3/8x1½ bolts | .60 |
| | 1 doz. 5/8x4 bolts | .60 |
| | 2 doz. 3/8x2 bolts | .60 |

| | | |
|---|---|---|
| | 4 doz. 3/8x2 counter-sink head blow bolts | 2.00 |
| 10/5 | 24–5/8x2 machine bolts | 1.40 |
| | 2 bars 5/8x2 iron | 12.33 |
| 10/12 | 1–¼″ drill | .40 |
| | 1–3/8″ drill | .60 |
| | 1–¼″ drill | .70 |
| 10/20 | 1 bx bolts | .50 |
| 10/24 | 1 carborundum stone | .75 |
| | 10# 8 penny nails | .70 |
| 10/19 | 1 grindstone | 15.00 |
| | ½ side leath. | 16.50 |
| | 6 bx tub rivets | .75 |
| | 1# asst. copper rivets | .60 |
| | 130# round iron | 11.70 |
| | 14# 3/8 round iron | 1.74 |
| | 2 doz ½x1½ machine bolts | 1.08 |
| | 2 doz ½x2 machine bolts | 1.15 |
| | 2 doz 5/8x5 machine bolts | 2.35 |
| | 20# 8 D nails | 1.40 |
| | 2 #3 D nails | .16 |
| 10/22 | 1 blacksmith drill | 22.20 |
| 9/8 | 1 160# anvil | 20.00 |
| | 1 50# vise | 10.00 |
| | 1 railroad plow | 71.25 |
| 9/11 | 1 shoeing hammer | 2.00 |
| 10/24 | 2–3¼ Mitchell skein & Box for broken axle (wagon repairs) | 11.00 |

Making a total allowance under this heading of .......... $358.60

The remaining items thereof, disallowed as not being proper charges under the bond, are as follows:

| | | |
|---|---|---|
| 8/22 | ½ doz double bit axes and handles | $21.00 |
| | 1 5 ft 2-man saw | 3.50 |
| | 1 pr. handles for saw | 1.25 |
| 8/28 | 6 shovels | 12.00 |
| | 1 doz pick handles | 7.20 |
| | 1 brace | 4.50 |
| | 9 RR picks | 15.75 |
| | 1 50-ft steel tape | 2.65 |
| 7/31 | 1–4 tine fork | 2.00 |
| 9/5 | 1 pr. lineman's climbers | 11.00 |
| 9/8 | 12# block wire | 1.20 |
| | 6–½ cable clamps | .75 |
| | 6 RR pick handles | 4.50 |
| | 1 doz D hdl shovels | 21.00 |
| 9/9 | 1 6 ft. crosscut saw | 9.50 |
| | 1 pr handles for saw | 1.00 |
| | 1 pr sheep shears | 3.50 |

| | | |
|---|---|---|
| | 6 DB ax handles | 5.00 |
| | 2 sledge hdls | 1.50 |
| | 3 D bit axes | 10.50 |
| | 2–2 gal. W bags | 3.00 |
| | 1 pr. pincers | 2.75 |
| | 2 12″ Mill files | 1.00 |
| | 3 pr 1″ butts | .25 |
| | 6 RR picks | 9.00 |
| 10/5 | 1 saw set | 1.85 |
| | 3–10″ mill files | 1.05 |
| 10/12 | 6–8″ mill files | 1.50 |
| 10/19 | 75# 1″ oct. steel | 15.00 |
| 10/20 | 1–7# sledge | 1.75 |
| 10/24 | 1 saw set | .50 |
| 10/19 | 1 5½ ft. cross cut saw | 9.00 |
| | 6 doublebit axes | 21.00 |
| | 6 long handle shovels | 12.00 |
| | 6 RR picks hdls | 39.00 |
| | 1 D 8 saw | 3.75 |
| | 194# ½x2½ steel | 17.46 |
| | 1 pr saw handles | 1.25 |
| | 1 hammer | 1.50 |
| | 2 log chains | 13.00 |
| 11/10 | 1 pr. shears | .85 |
| | 1 pocket level | .20 |
| | 1 saw set | 1.50 |
| 8/22 | 2 8″ files | .50 |
| 8/28 | 1 6 inch saw file | .20 |
| | 22# 1-inch manila rope | 8.80 |
| 8/31 | 1 14 inch rasp | .65 |
| 9/8 | 1 saw gauge | 1.00 |
| 9/11 | 3 scrapers | 67.50 |
| 9/14 | 1 20 A Martin Ditcher | 112.75 |
| 10/3 | 28# rope 1″ for pulling trees | 11.20 |
| 10/5 | 3 8-inch files | .90 |
| 10/24 | Postage on above | 1.50 |
| 10/19 | 3 8-inch flat files | 1.00 |
| | 3 12-inch flat files | 1.50 |
| | 100 ft. 1 inch rope for pulling trees | 11.20 |
| 9/19 | 100 ft. 3/8 cable for pulling trees | 13.00 |

◼ Plaintiff's Exhibit No. 10 consists of groceries consumed at the camp for laborers, and are allowable in the sum of $5.

◼ Plaintiff's Exhibit No. 11 consists of office equipment, such as stationery, clock, pens, and pencils, in the sum of $9.15, and are not allowable, as these items would have to have been used by the contractor should the work have been done under any other circumstances and at another place.

◼ Plaintiff's Exhibit No. 12 covers miscellaneous items, consisting of fish lines, pocketknives, rubber boots, watch, shoe tacks, shoe soles, etc., in the sum of $24. It would seem

no reason is required to be given as to why these items are not allowable, for a contractor is supposed to furnish his own wearing apparel, such as shoes or boots, and also watch and pocketknives, which he uses at all times, and in going fishing to take care of that expense. These items are disallowed.

Intervener recognizes a credit of $100, paid by Craven check, in his claim of the balance of $2,805.41.

The second objection of the defendant surety as to the materials furnished not having been used in the improving of the highway and in the prosecution of the work is that it cannot be determined as to what proportion of the work was done on section 3 under the contract as compared with section 2 not covered by the bond. While there is in evidence no estimates of the engineer on the work, yet Subcontractor Nelson testified that there was about 15 per cent. of the work done below station 1002 plus 50, and 85 per cent. above. The 85 per cent. done in section 3 is covered by the bond. I feel that I should accept the testimony of the subcontractor, and consider it as sufficient as to what proportion of the work was done on work covered by the bond, as it is definite enough, in the absence of any estimate of the engineer in charge. He, as contractor, did the work, and, in the absence of anything definite to the contrary, we must assume that he is able to give the percentage of the work done at the place covered by the bond. So there will be deducted from the amount of the materials furnished by intervener, as above allowed, 15 per cent. of such amount, being the amount of the work done in section 2 not covered by the bond, and also the $100 check given by Craven, already credited on the Nelson account, which should be deducted from the 15 per cent., as there were no instructions by Craven given at the time he gave the check as to how it should be credited, and therefore that payment should be credited on the portion of the Craven account not covered by the bond.

In view of the conclusions thus reached, where intervener is allowed the total sum of $2,131.13, plus the sum of $100 to be deducted from the 15 per cent. of the work not done in section 3, making the total sum of $2,231.-13, less the 15 per cent., or $334.67, judgment may be entered for intervener and against the surety company for the balance of $1,896.46, and interest at the rate of 7 per cent. per annum from March 7, 1926, to date, and costs.