**UNITED STATES v. HERCULES CO. et al. (BUCYRUS–ERIE CO., Intervener).**

No. 504.

District Court, S. D. Mississippi, W. D.

Sept. 10, 1931.

See, also, 52 F.(2d) 451.

Dabney & Dabney, of Vicksburg, Miss., and Roger Sherman Hoar, of South Milwaukee, Wis., for intervener.

Brunini & Hirsch, of Vicksburg, Miss., for defendants.

HOLMES, District Judge.

The present intervener supplied the contractor with parts to repair an excavating machine, weighing about 175 tons, known as a class 24 Bucyrus dredge line, with a 115-foot boom and a 3½-yard bucket, mounted on trucks, being the same dredge as that mentioned in the opinion rendered to-day in this case in the intervention of Royal Route Co., Limited. 52 F.(2d) 451. It is claimed that the repairs were rendered necessary by use of the machine in the prosecution of the work provided for in the contract; that the parts were shipped in pursuance of a telegraphic order from the principal in the bond; that they were received by the contractor and installed upon the machine for use on the work; and that the sureties are liable for the reasonable purchase price thereof, which admittedly has not been paid.

The dredge was purchased by the contractor from the sureties on its bond for use on the Snow Lake job, and transported to the place of work at Laconia, Ark., in August, 1925. It was an old machine at the time, having been in the hands of two former owners, since its purchase when new from the Bucyrus Company in 1919. During the six years from the time it left the factory until it was acquired by the Hercules Company, it had probably been in actual use for about half that time, and was in need of some repairs, not very many, when it was brought to the Snow Lake job; "the same nature of repairs that you would expect to make on a machine laid up for two years," to use the exact words of the witness Guibet, who was a stockholder, director, and active manager of the contracting company. When the machine was first put in use under the contract, or how long it continued to be operated, does not appear. The only testimony on the subject of the work done by it is that while there it moved about 400,000 yards of dirt. The work was interrupted by high water in October, 1926, and the contractor never did any more work after that time. The testimony leaves it uncertain what the contractor agreed to pay for the machine, probably $25,000 or $30,000. It cost originally in 1919 $45,000. The present make with all improvements sells for $69,000.

The claim of the intervener is for $750, for parts shipped over a period beginning November 14, 1925, and ending April 23, 1926. The largest item was the first shipped, and is for a center pintle, $250. The next largest invoice was for several items aggregating $126.80, shipped December 12, 1925. There are nine smaller invoices from December 26, 1925, to March 13, 1926, inclusive, and the last, on April 23, 1926, was $150 for four channels and four bars. They were all made specially for this dragline, No. 3307. In addition to having testified that the machine needed some repairs when purchased, Mr. Guibet also stated that parts were frequently ordered in advance so as to have them on hand to prevent a shutdown. In which, if either, category the items in controversy should be, it is not possible to tell from the testimony. When, how, or by whom the parts were installed, or that they were in fact used upon the machine, or in work under the contract, does not appear anywhere in the record. The parties having waived a jury, the matter, by consent, is before the court on the law and the facts.

In order for the claimant to recover in this intervention, it must appear that the repairs were not such as added materially to the value of the dragline and rendered it available for work under other contracts, but that they were of an incidental and comparatively inexpensive character, which did not in fact constitute a part of the contractor's capital investment, but were simply replacements rendered necessary by ordinary wear and tear under the particular contract. American Surety Co. v. Lawrenceville Cement Co. (C. C.) 110 F. 717, 721; Maryland Casualty Co. v. Ohio River Gravel Co. (C. C. A. 4th Cir.) 20 F.(2d) 514, 518.

In the absence of any evidence of the cause of the necessity of the repairs, or of any proof that the repairs were made at all, it is unnecessary to determine whether they were of a major or minor character. They may have been either, or partly one and partly the other, but there is an utter absence of proof to guide the court to any rational conclusion. The duty of producing satisfactory proof of this character is upon the intervener, and, from the evidence adduced, including that above outlined, the conclusion is reached that it has wholly failed to meet this burden.

The intervener admits that the burden of proof is upon it, but says: "We are not required to prove, nor do we contend, that the particular parts furnished by us wore out on the job. We are rather contending, and be-

lieve that we have proved, that parts corresponding thereto wore out on the job, and that the parts supplied by us were required to replace these. Quite obviously the cost of a repair part is chargeable to the breakage or wearing out which it replaces, even though it itself never thereafter breaks or wears out." If this be correct, the intervener has not met the burden which it prescribes for itself. There is not only no proof that the parts furnished were installed upon the machine or used upon the job, but none that parts corresponding to those furnished were so worn out. The age of the machine when bought by the contractor and the other circumstances in evidence more strongly justify the inference that parts corresponding to those furnished were worn out on previous jobs before the dredge was acquired by the contractor.

My finding is for the sureties, and judgment may be entered accordingly.