## UNITED STATES, to Use of TUROVER, v. CHARLES H. TOMPKINS CO. et al.

### No. 5983.

United States Court of Appeals for the District of Columbia.

Decided June 25, 1934.

Simon Hirshman, of Washington, D. C., for appellant.

James Sherier, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This appeal by I. S. Turover, a lumber dealer, plaintiff below, is from a directed verdict for the Tompkins Company and the Seaboard Surety Company, contractor and surety, respectively, defendants below, in an action on their bond given in connection with a contract for certain work on an office building for the House of Representatives.

The bond provided that the Tompkins Company "shall promptly make payment to all persons supplying the principal with labor and materials in the prosecution of the work," and that company duly entered upon its performance of the contract. 28 Stats. 278, August 13, 1894; 33 Stats. 811, February 24, 1905; 36 Stats. 1167, § 291, March 3, 1911 (40 USCA § 270).

The Tompkins Company contracted with the District Concrete Company to erect forms for pouring the concrete foundations of the building.

On the order of the concrete company the plaintiff delivered on the job the lumber used for its purpose, for which a small balance remains unpaid.

The defendants contend that the lumber was sold to the concrete company; that it was equipment rather than material; that in any event it was not material which went into the work but was removed, and usable, by the concrete company after completion of its subcontract; for which reasons the plaintiff is not entitled to recover against them.

There seems to be no contention that any of the lumber was ever returned to the plaintiff, but, of course, that circumstance is not conclusive, since equipment can disappear as well as material.

The president of the concrete company testified that the lumber was used on this job many times over, and that what was left was removed by direction of the Tompkins Company, stored, and finally used for kindling.

That, in his opinion, it could not have been used again for concrete forms after this job, being left full of holes, warped, splintered, and cut down from its delivery size.

The foreman of the job for the concrete company testified that while ordinarily only 15 to 20 per centum of lumber used for such forms would be exhausted in the work, this lumber was so exhausted by being cut down in size and used over and over again that only two or three loads were carted away, which were used for firewood.

But the president of the Tompkins Company testified that the concrete company's truck hauled good lumber from the job for a week or more after completing its subcontract, and that only from 15 to 25 per centum of lumber used in such work was commonly exhausted.

His foreman testified that usually only 10 per centum would be exhausted by such use; that the concrete company carted away 15 or 20 loads of usable lumber after completing

its work, and thereafter at his order several loads of waste lumber, which they had left on the job.

A bond such as we have here is intended to afford materialmen on government building projects relief analogous to that given materialmen on private projects by the usual lien statutes.

Various state courts have passed upon questions as to whether lumber for concrete forms is lienable material under their statutes, and many well-considered cases hold that it is, certainly to the extent of its exhaustion in the work; the theory being that at least so much of its value went into the building. Barker & S. Lumber Co. v. Marathon Paper Mills Co., 146 Wis. 12, 130 N. W. 866, 36 L. R. A. (N. S.) 875; B. F. Avery & Sons v. Woodruff & Cahill, 144 Ky. 227, 137 S. W. 1088, 36 L. R. A. (N. S.) 866; Chicago Lumber Co. v. Douglas, 89 Kan. 308, 131 P. 563, 44 L. R. A. (N. S.) 843; E. R. Darlington Lumber Co. v. Westlake Construction Co., 161 Mo. App. 723, 141 S. W. 931, 933; Moritz v. Sands Lumber Co., 158 Wis. 49, 146 N. W. 1120, 51 L. R. A. (N. S.) 1040.

While these decisions do not control the case before us, they are persuasive in determining a defendant's liability under a bond to "promptly make payment to all persons supplying the principal with labor and material in the prosecution of the work."

If under state statutes of similar language and purpose recovery would be allowed from the private owner of a building on the theory that plaintiff's material went into its construction, we see even greater reason for liability under a bond to pay all persons supplying materials in the prosecution of the work.

The Tompkins Company required and used the forms in the making of which it is admitted that this lumber was used over and over again.

The lumber was furnished for that purpose, and delivered to the job by the plaintiff, and, whatever its condition when removed, it was neither returned to him nor intended to be returned.

That it was ordered by and perhaps charged to the subcontractor does not affect the liability of the defendants. U. S. to Use of Hill v. American Surety Company, 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437; Mankin v. Ludowici Company, 215 U. S. 533, 30 S. Ct. 174, 54 L. Ed. 315.

In Title Guaranty & Trust Co. v. Crane Co., 219 U. S. 24, 31 S. Ct. 140, 142, 55 L. Ed. 72, the claim arose under a similar bond for drawings and patterns for metal castings that went into the work, and the Supreme Court said that "those who furnish the patterns have as fair a claim to be protected as those who erect the scaffolding upon which the carpenters stand in doing their work upon the ship."

And in Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 251, 62 L. Ed. 703, L. R. A. 1918D, 776, a claim for groceries furnished the contractor for his laborers working at a distance from any settlement was held to be covered by such a bond, the court saying: "But the surety contends that the words 'in the prosecution of' the work are not used in the bond and the act in their natural sense, but should be given a conventional meaning so as to exclude labor and materials which contribute to construction only indirectly, as do the supplies consumed by a contractor in operating his plant. * * * This court has repeatedly refused to limit the application of the act to 'labor and materials directly incorporated into the public work."

In Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 616, 61 L. Ed. 1206, the Supreme Court said: "The purpose of the act was to provide security for the payment of all persons who provide labor or material on public work. This was done by giving a claim under the bond in lieu of the lien upon land and buildings customary where property is owned by private persons. Decisions of this court have made it clear that the statute and bonds given under it must be construed liberally, in order to effectuate the purpose of Congress as declared in the act. In every case which has come before this court, where labor and materials were actually furnished for and used in part performance of the work contemplated in the bond, recovery was allowed, if the suit was brought within the period prescribed by the act. Technical rules otherwise protecting sureties from liability have never been applied in proceedings under this statute. As the basis of recovery is supplying labor and material for the work, he who has supplied them to a subcontractor may claim under the bond, even if the subcontractor has been fully paid."

In view of these decisions, going further than the plaintiff's contentions here, and of the contradiction of testimony touching the extent of exhaustion of this material on this job, we are of opinion that the trial court erred in directing a verdict for the defendants; that its judgment must accordingly be reversed; and the cause remanded for a new trial.

Reversed.