MASSACHUSETTS BONDING & INS. CO. v. UNITED STATES, for Use of CLARKSDALE MACHINERY CO.

UNITED STATES, for Use of CLARKSDALE MACHINERY CO., v. MASSACHUSETTS BONDING & INS. CO.

No. 8236.

Circuit Court of Appeals, Fifth Circuit.

March 3, 1937.

HOLLAND, District Judge, dissenting in part.

———————

W. W. Venable, of Clarksdale, Miss., for appellant and cross-appellee.

J. M. Talbot, of Clarksdale, Miss., for appellee and cross-appellant.

Before FOSTER and SIBLEY, Circuit Judges, and HOLLAND, District Judge.

SIBLEY, Circuit Judge.

The suit was at law, brought by the United States, for the use of Clarksdale Machinery Company, on the bond of L. A. Wilson & Co., contractors to build a certain levee near the Mississippi river, Massachusetts Bonding & Insurance Company being the surety. The bond, pursuant to 40 U.S.C.A. § 270, contained the additional obligation that the contractor "shall promptly make payments to all persons supplying him * * * with labor and materials in the prosecution of the work." Clarksdale Machinery Company was alleged to have supplied materials consisting of some 50,000 repair parts for a fleet of small Ford trucks used by the contractor, and also to have supplied under lease fifteen of the trucks, the rental for which was asserted to be recoverable under the bond. The general issue was pleaded. Other claimants appeared, and the case was referred for simplification to an auditor whose report was in the main accepted, the contest coming finally on the claims above mentioned. As to them the case went to the judge without a jury, and he made special findings of fact and gave judgment against the surety for the repair parts, but denied recovery for the truck rental on the ground that the rental charge was excessive and a fair amount had already been paid. The surety, appealing, contends that the parts supplied were not materials but were the keeping up of the contractor's capital equipment. The use-plaintiff on cross-appeal contends that the lease of the trucks was bona fide and the agreed rental conclusive on the surety and to be recovered in full.

In sufficient outline the facts found are these: The contractor and his subcontractors proposed to use as part of the equipment for moving dirt to make the levee thirty-five one and one-half ton Ford trucks. The work had a time limit under penalty, and could be done only in favorable weather. When the weather permitted, the trucks were run day and night seven days a week, habitually overloaded and at high speed, in dust clouds that not

only ground out the machinery but caused collisions on an average of one a day. The repairs and replacements necessary were frequent and extensive, and included almost every part of a truck, even three rebuilt motors and four new ones, so that in the course of the job enough parts were furnished to have rebuilt each truck several times almost completely. All this, however, is usual in such levee work and was known to and could have been foreseen by the surety. The trucks at the end were still on hand but about worn out and worth but little. Fifteen of the trucks were bought by the contractor from Clarksdale Machinery Company on credit, with retention of title. During the work the contractor was about to fail and in writing surrendered the trucks for the balance due for their purchase. On the same day the Clarksdale Machinery Company leased them back to the contractor until the levee construction project should be completed for $3,602, to be paid at the end of a month, $3,602 at the end of two months, and $3,602 at the end of the job, the trucks to be used only on that job, and to be kept at lessee's cost in good order and condition, ordinary wear and tear excepted. The sums to be paid aggregated the exact balance of the purchase price. Two of the payments were made; the third is sued for. The evidence is that such trucks for such work might be rented for $200 each per month, or $3,000 for the fifteen. The hauling was in fact completed in thirty-four days after the lease was made.

■ The statute and the bond given under it speak of paying "persons supplying labor and materials in the prosecution of the work." Labor is not here involved, but only materials. A strict construction was at first given the words by the lower courts, but a series of decisions by the Supreme Court has established a liberal construction as proper. Thus in U. S., to Use of Hill, v. American Surety Co., 200 U.S. 197, 26 S. Ct. 168, 50 L.Ed. 437, materials furnished to a subcontractor were held covered by the contractor's bond. In like vein in Title Guaranty & Trust Co. v. Crane Co., 219 U.S. 24, 31 S.Ct. 140, 55 L.Ed. 72, the statute was held to cover the building of a vessel and to protect those who furnished cartage and towage and drawings and patterns for the work, though these did not go directly into the construction. Quarrying stone at a distance and hauling it to the work were held covered in United States Fidelity & Guaranty Co. v. U. S.

for Benefit of Bartlett, 231 U.S. 237, 34 S. Ct. 88, 58 L.Ed. 200. Liberal construction was stressed in Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206, and the renting of cars, track, and other equipment to be used in the work was held to be a furnishing of materials covered by the bond. In Brogan v. National Surety Co., 246 U.S. 257, 38 S.Ct. 250, 62 L.Ed. 703, L.R.A.1918D, 776, it was adjudged that labor and materials not incorporated into the work were covered, and where, because of special circumstances, the contractor had to board the laborers, that provisions furnished to him for that purpose were covered. The parties here concede on the one hand that the supplying by sale to the contractor of equipment which should last over several jobs is not covered by the bond, though rental of such is; and on the other hand that recurring expense in maintaining as distinguished from replacing such equipment is covered. Recent cases on this distinction are United States v. McCay (D.C.) 28 F.(2d) 777; United States v. Hercules Co. (D.C.) 52 F.(2d) 454; United States v. Tompkins Co., 63 App.D.C. 332, 72 F. (2d) 383; United States v. James Baird Co., 64 App.D.C. 12, 73 F.(2d) 652; United States v. Fidelity & Deposit Co. (D.C.) 4 F.Supp. 211; United States v. Mittry Brothers Const. Co. (D.C.) 4 F.Supp. 216.

■ The contention as to the parts furnished is whether they are to be considered repairs and maintenance of equipment, or in the nature of replacements. The surety contends that the question is to be answered on a basis of the general and normal use of trucks; the suppliers that it is to be answered, as the judge held, in view of the sort of work that the trucks were actually devoted to. We think the latter is the practical and true view. Ordinarily a new truck will last for years, and a new motor or a new rear axle or even new tires would be replacements rather than materials furnished in the prosecution of the work in which the truck was used. So also repairing the damage done by a collision would likely be so considered. But shovels, drill points, and the like, though equipment in a sense, because they wear out quickly and break often, are more like materials consumed in, but not built into, the work. Levee work is vividly pictured as of so peculiar a kind as it is ordinarily prosecuted that equipment that would be permanent in ordinary use is consumable and consumed in this

use, and that collisions which are elsewhere unusual occur here frequently and unavoidably and as part of the day's work. A breakage which might ordinarily be mended, or a partial failure which might be remedied by dismantling, replacing the worn part, and rebuilding the truck, is in this work more quickly and economically remedied by replacing the whole motor or other assembly at once. The surety knew that this was the character and method of the work to be done. His primary obligation under his bond was to the United States that the job be accomplished and on time. Contractor's expenditures in carrying on the work which were reasonably necessary to accomplish this were thus for the relief of the surety, though they added to his burden on his secondary obligation to laborers and materialmen. Also to be remembered is the fact that in replacing a failing motor rather than in continuing frequently to patch it up not only is time saved but also expensive labor for which the surety would be bound. To let the trucks stop would be to delay or perhaps defeat the work. In view of the extraordinary character of levee work as commonly carried on, we agree with the auditor and judge that all these parts, even including new motors, are to be considered consumable material furnished in the prosecution of the work rather than additions to or replacements of the capital equipment of the contractor. He had no more trucks and they were in far worse shape when the work stopped than when it started.

As to the fifteen leased trucks, their original purchase price, being for equipment, was not covered by the bond. When the purchaser defaulted and seemed about to fail, the seller could take them back for the balance of the purchase price, as he did, they not being worth more. The contractor needing trucks could then rent some and the rental would be protected by the bond. The surety could not complain that the trucks so rented happened to be the same previously sold. But, in order that the agreed rental shall be binding on the surety, it must be really a fair and actual rent. It is evident here, and admitted by some of the witnesses, that the so-called rental was as to amount really the balance of the purchase price sought to be collected in this form. The charge was attempted to be supported by showing that for trucks used in this destructive levee work $200 per month each was obtainable, the lessee to keep them in repair, and that it was supposed that these trucks would be used for three or four months. But it is use and not time that mainly counts in such a rental, and it must have been known how much work remained to be done and it was done in but little over a month. The fair rental for a month's use would be about $3,000, but over $7,200 has already been paid. The repairs on these trucks also were allowed above. Under these circumstances, no further rental ought to be recovered as a charge against the surety.

Judgment affirmed.

HOLLAND, District Judge (concurring in part and dissenting in part).

The distinction between incidental replacement as distinguished from capital investment should be adhered to and applied. The trial court and the auditor applied this rule too liberally, looking to the character of the work to be done. The rule applied by the trial court was that if the trucks were totally used up, and their use destroyed in a particular work, that such use of the trucks made the furnishing thereof a lienable item. While full regard should be given to the heavy and burdensome character of the levee work, the trial court did not limit the consideration of the incidental feature of the replacement to such heavy work normally done, but included automobile parts totally consumed and used, when the work was negligently, carelessly, and recklessly done.

The true rule should be that the automobile parts which were furnished are protected by the surety bond when they are furnished as incidental to upkeep, and their use is entirely consumed in the performance of the contract, hazardous, burdensome, heavy, and dangerous though such work may be, and in its nature destructive of equipment, but only when such contract work is carried on normally and without negligence. The trucks were constantly overloaded, and this overloading, with the dumping of the dirt into the trucks, produced undue wear and tear upon the truck bodies. The case on direct appeal should be reversed and remanded for a computation of the amounts lienable in accordance herewith.

As to the cross-appeal, I agree with the decision of the majority.