UNITED STATES of America, for the use of LLEWELLYN MACHINERY CORPORATION, Appellant,

v.

NATIONAL SURETY CORPORATION et al., Appellee.

No. 17645.

United States Court of Appeals Fifth Circuit.

June 29, 1959.

Rehearing Denied July 29, 1959.

Hutcheson, Chief Judge, dissented.

Edwin H. Underwood, Jr., Wakefield & Underwood, Thomas H. Wakefield, Robert G. Hewitt, Miami, Fla., for appellant, Llewellyn Machinery Corp.

Richard F. Ralph, Miami, Fla., William F. Davenport, Jr., St. Petersburg, Fla., Fowler, White, Gillen, Yancey & Humkey, Miami, Fla., Harris, Wing & Davenport, St. Petersburg, Fla., of counsel, for appellee Union Trust Co.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

The appellant here sued the defendant Surety Corporation under the Miller Act, 40 U.S.C.A. §§ 270a–270d. The Surety Corporation was surety of a prime contractor, Thomson Contracting Company which had contracted to build certain works in the Bahama Islands for the United States Government. The claim here in issue represented the value of certain construction equipment furnished by appellant under a rental agreement whereby the general contractor agreed to pay approximately $1200 per month for the use of the equipment and further agreed to "assume all responsibility for damages or loss to [the said] eqpt."

Appellant duly furnished the equipment to Thomson and the latter shipped it by water to the vicinity of the Bahamas where, shortly thereafter, it was lost at sea without salvage. As is provided under the applicable statute, Thomson provided a payment bond which was furnished by National Surety Corporation, the appellee here.

The trial court, on motion for judgment on the pleadings, it being plain that there was no issue of fact involved, dismissed the complaint, holding "that the loss complained of does not come within the purview of the Miller Act and the defendant's bond filed in conformity therewith." This appeal followed.

It is not disputed by the surety that rental payments contracted for by a general contractor are recoverable under the terms of the Miller Act. See Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206. Appellant's claim that the obligation undertaken by the prime contractor to make good for any loss of the equipment was an obligation of the same nature as the agreed monthly rental is supported in principle by United States to Use of Norfolk Southern R. Co. v. D. L. Taylor Co., D.C., 268 F. 635, 644, affirmed 4 Cir., 277 F. 945. In that case the subcontractor rented certain barges. In consideration for the use of the barges the subcontractor agreed to pay a daily rental and also agreed to return them in the same condition as they were when he took possession of them. He agreed to make all repairs for which he was liable. Upon the barges being damaged during the course of the work, the lessor of the equipment brought an action for rent and cost of repairs against the surety. In allowing recovery, the Court said: "Assuming that the bond is liable for the contract price of the rental of the scows, it would seem that these items (the repairs) come within the terms of the bond."

Although neither party has been able to cite any case expressly holding that a rental agreement embodying an obligation to make good a loss of rented equipment comes within the terms "labor and material in the prosecution of the work," we bear in mind the language of this Court in Glassell-Taylor Company v. Magnolia Petroleum Co., 5 Cir., 153 F.2d 527, 529:

"The Miller Act * * * is highly remedial in nature. It is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those who furnish labor or material to public works."

This language is fully justified by that of the Supreme Court in Illinois Surety Co. v. John Davis Co., supra [244 U.S. 376, 37 S.Ct. 616], where it is said:

"* * * Decisions of this court have made it clear that the statute and bonds given under it must be construed liberally, in order to effectuate the purpose of Congress declared in the act. In every case which has come before this court, where labor and material were actually furnished for and used in part performance of the work contemplated in the bond, recovery was allowed, if the suit was brought within the period prescribed by the act. Technical rules otherwise protecting sureties from liability have never been applied in proceedings under this statute."

We find nothing to the contrary held or suggested in Massachusetts Bonding & Insurance Co. v. United States for Use of Clarksdale Mach. Co., 5 Cir., 88 F.2d 388.

We cannot see why an obligation of payment made by the general contractor to the appellant here, which obligation included an undertaking to pay for the loss of the equipment, should not come within the full protection of the bond just the same as would an obligation to make the monthly rental payment standing alone. To the complaint of the appellee that this would place a burden on it not contemplated upon the writing of the bond, it need only be said that in the customary dealings between parties at arm's length it is self evident that the monthly rental payments which were admittedly secured by the bond would have been greater if the risk of loss had remained on appellant. Thus the surety company obtained the benefit of having its undertaking based on a monthly rental of a lesser amount if the contract had been completed without the loss of the equipment. In return for having the benefit of the lower rental payment subject to its guarantee, it, through the terms of the Thomson contract, assumed the risk of loss. It, of course, was within the power of the bonding company when entering its contract of surety to restrict the nature of the obligations which were undertaken

by its principal to out and out payments for purchases and/or out and out rental payments had it seen fit to do so. Having failed to restrict the contractor's method of payment so as to exclude an agreement to stand liable for a loss of equipment, appellee cannot complain if it must respond to the extent that Thomson failed to make payments strictly under the terms of the rental agreement it actually made. This agreement included an obligation to reimburse appellant for the value of any equipment damaged or lost in the operation.

The judgment is Reversed and the case Remanded for further proceedings not inconsistent with this opinion.

HUTCHESON, Chief Judge (dissenting).

Of all the aids to construction of statutes or contracts, the one most likely to swallow up all the other aids, particularly the one which enjoins giving to words their usual, their ordinary, meaning, is the one which, enjoining a liberal construction, overtempts an opinion writer, where there is no restraining authority, to rewrite nearer to his heart's desire the statute or contract under construction.

It is to be expected, therefore, that my brothers, finding neither authority nor language in the contract in support of their view, that *the replacement cost of machinery and equipment rented to the prime contractor and lost by the sinking of the vessel in which it was being carried is within the terms of a Miller Act bond,* should lean heavily on the greatly overworked cliche that *the Miller Act is highly remedial and it is entitled to a liberal construction and application* to properly effectuate the congressional intent to protect those *who furnish labor or material to public works.*

Confessing that I myself have often drawn comfort in other situations from the same cliche and that I have no objection to its use when it does not result, as it does here, in running a good principle into the ground,[1] my objection to its use here is that it converts the surety on a Miller Act bond into a general insurer up to the limits of its bond of all property, without limit as to its value, leased or loaned to the prime contractor when it is lost or destroyed by him with or without his fault. With deference, this is a conversion which the Miller Act does not envisage and provide for and which, in my opinion, is clearly contrary to its intent and purpose to protect laborers and materialmen, a purpose which would be defeated if such persons were required to share the security of an inadequate bond with such bailors.

In addition to objecting to the conclusion of my brothers as come at too easily by the process of a construction which, as used here, is no more than a forced conclusion, I object, as a complete non sequitur and therefore a begging of the question, to the argument that, because the rental of the equipment is covered, the loss of it by sinking is also.

I vigorously dissent, therefore, as completely unwarranted, from the view that the Norfolk Southern case from the Fourth Circuit, holding as this court did in its well reasoned opinion in the Massachusetts Bonding case, infra, that repairs made necessary by the use of equipment on the project were covered by the bond, is authority for the very different holding of the majority here, that the replacement value of property bailed to and lost by the prime contractor was covered by the bond.

Finally, planting myself firmly on what was said and held in the well considered case from this circuit, Massachusetts

---

1. Cf. what was said and held by a court, of which my brother Tuttle was a member, in Guidry v. New Amsterdam Cas. Co., 252 F.2d 233, at page 235:

"While it is well settled in Louisiana that the statute should be given a liberal construction and the decision of each case must turn upon its own facts, it is equally well settled there that it is for the legislature and not the courts to extend the act and that it is essential to recovery that the plaintiff bring himself within it."

Bonding & Insurance Co. v. United States for Use of Clarksdale Mach. Co., 5 Cir., 88 F.2d 388, perhaps the leading case in this field, I categorically disagree with the conclusion of the majority that nothing is held or suggested in that case which is contrary to the sweeping addition which is made by the majority to the language of the bond and the statute here.

And now, having unpacked my heart with words as earnest as they are futile, I bring my ineffective disagreement with my erring brothers to a close with the comforting reflection that I have done the best I could to turn them from their way and that the blood of the decision is not on my head.

Rehearing denied; HUTCHESON, Chief Judge, dissenting.