WILEY, BANKS & Co., plaintiffs in error, vs. ALLEN & STANFORD, defendants in error.

If one partner take the *money* of the firm, and apply it to the discharge of his separate debt, without the assent or knowledge of the other member, it cannot be recovered back, unless the separate creditor knew, or had reason to believe, that at the time of the payment it was partnership money.

Complaint, in Habersham Superior Court. Tried before Judge HUTCHINS, at October Term, 1858.

This was an action by Wiley, Banks & Co., merchants of Charleston, South Carolina, against Allen & Stanford, late merchants doing business in Lawrenceville, Ga., on their promissory notes—one for $1,443 11, one for $979 28, and one $429 17.

The plaintiffs offered in evidence the notes sued on, and closed.

The defendant then introduced the interrogatories of *Nathan L. Hutchins*, the presiding Judge, which, by agreement of parties, were read; the answers to which are as follows:

"On or about the 14th June, 1851, I took a note made by Thompson Allen, and Kenan T. Terrell and Hamilton Garmany, securities, for the sum of $2,349 70, payable to plaintiffs, at 12 months. This note was paid by Thompson Allen, as follows:

He paid me on the 18th January, 1852, $500; on 24th May, 1853, $300; he paid to plaintiffs, as I learned from both parties, on the 2d February, 1854, $1,000; he paid to ———— ———— on the 23d March, 1855, $753 65; and on the 29th October, 1855, the balance in full, $84 00. He does not know, nor has he any information or belief, that the money was paid out of the funds of Allen & Stanford, and does not know where Allen obtained it. I know that Allen was much indebted; he had considerable property about him; a few slaves, a town lot, and merchandise, the value of which I cannot tell; I never considered him worth much; I believe, from the quantity of unpaid debts, and the manner of closing the concern, that the partnership firm of Allen & Stanford wound up insolvent for a considerable sum; for how much, I cannot tell; I know that there are divers unpaid judgments against it."

The defendants then introduced the interrogatories of *James D. Spence*, the answers to which are as follows:

"I know Allen & Stanford; commenced clerking for the firm of Allen & Stanford 25th day of April, 1853, and left them 28th May, 1855; the firm consisting of Thompson Allen and John R. Stanford, and the business was conducted in Lawrenceville, Gwinnett county, by Thompson Allen; John R. Stanford was at their place of business about the last days of May, 1855, and stayed three or four days. He has passed through their place of business at other intervals, but did not make but short stays, nor attend to any business of the firm only on the first visit, that I recollect. Thompson

Allen did take out money from the firm, at divers times, for his private use, but the amounts I cannot recollect, at each time. The defendant, John R. Stanford, was never present at any time that I know of, when the money was taken; I do not believe said Stanford had any knowledge of the fact, or wou'd have assented to it. I do not know, of my own knowledge, that Nathan L. Hutchins had any papers against said Thompson Allen. I counted out eight hundred and forty dollars out of the funds of Allen & Stanford, and delivered to said Allen, at his request; he took it and left with it for Col. Hutchins' office; it was during our Superior Court, March Term, 1855; it was in the absence of Stanford, or without his knowledge or consent, so far as I believe. I believe that the firm of Allen & Stanford kept correct books, and the above $840 is on the books of original entries of the firm, for cash."

Defendant then offered the interrogatories of *Thompson Allen*, to which plaintiffs objected, on the ground that said Allen was an incompetent witness, interested in the event of the suit. The Court overruled the objection and admitted the testimony, to which decision the said plaintiffs, by their attorneys, excepted, and now assign the same as error. The answers of said Allen were then read to the jury, as follows:

"John R. Stanford and Thompson Allen composed the the firm of Allen & Stanford, and transacted business in Lawrenceville, Georgia; business was in the year 1853, month not recollected, and closed 18th September, 1856. I was indebted to plaintiffs before and at the commencement of the business of Allen & Stanford; plaintiffs held my note for over two thousand dollars, precise sum and date not recollected; no one was securities to the first notes, but afterwards, I reduced the indebtedness to twelve or fourteen hundred dollars, and gave a new note for said sum, payable 12 months after date, and giving Capt. Hamilton Garmany and Kenan T. Terrell as securities. I paid off the note, or most of it, in March, 1856, to Nathan L. Hutchins, Esq., attorney

for plaintiffs; afterwards paid the remainder of it to said attorney, date not recollected; the money paid by me belonged to Allen & Stanford, and at the time the payment was made, the business was under my sole control; Mr. Stanford living in Clarksville, was not there, and did not consent or know any thing about it. I can form no estimate of the difference between the assets and liabilities of said firm; I cannot say whether it was insolvent to a larger or smaller amount, as I have had no control of the business since 18th September, 1856; the business since that time, was nominally in the hands of receivers, but under the control of Mr. Stanford. The capital was the amount of goods I had on hand, and the credit his name gave the firm, and the goods subsequently purchased on credit by the firm; there was no cash furnished; I do not know the amount of the profits, nor the debts, good or bad, but perhaps the books will show. Perhaps, at the commencement of the business, I was insolvent, but it was not known to me or the public; at this time, I am, without a doubt."

*Cross Examined.*—"Our books show the cash transaction, and how it was disposed of, and were at all times accessible to Mr. Stanford, when in Lawrenceville. I was in the habit of using what money I saw proper, from the commencement of the business, and heard no objection from Mr. Stanford, until the early part of the year 1856; then he complained that my cash account was too large; and after that, frequently made the same complaint. To the best of recollection he was, on an average, at least once a year in Lawrenceville, and scrutinized closely the condition of the firm. I remained in business till the 18th September, 1856."

Defendant then introduced in evidence, a second set of interrogatories for said *Thompson Allen,* the answers to which are as follows:

" If he ever said in answers to any other interrogatories, that the business of Allen & Stanford was closed on the 18th of September, 1856, he was mistaken; for he well knows

that the partnership was dissolved the 18th September, 1855; he is positive of this, because he has the original papers before him dissolving the partnership, and because he left Georgia 11th January, 1856, and has never been back since, and is certain it was dissolved the September preceding. He does not feel disposed to restate what he testified to in other interrogatories, or to attempt to correct statements upon the mere *ipse dixit* of counsel propounding the question; if the interrogatories were before him, he could then refresh his memory, and be able to correct any errors in his former answers, that might become apparent to his mind. He is of the impression that his answers to the other interrogatories referred to, contain all the information he has on the subject of the notes of witness to the plaintiffs in this case ; he cannot say, with certainty, whether the firm of Allen & Stanford was largely indebted to plaintiffs from the spring of 1853, but the bills of merchandise which, he presumes, are all accessible to defendants, will show the exact amounts, and the dates of all the indebtedness of said firm to plaintiffs. As to entries on the books of Allen & Stanford, he declines to answer from memory, as the entries are the best evidence, the books not being before him, witness. He must again, decline to answer, whether or not he had drawn all his stock out of the firm, the first year; because he cannot do so with accuracy, not having the books before him, and respectfully refers to the books, as the best evidence to show what amount was drawn from the concern, the dates of drawing, and the amount of leather or other goods, or money, which was paid into the firm by defendants."

*Cross Examined.*—" He has not a copy of the interrogatories heretofore answered in this case, before him, and that his answers to the first direct interrogatories will fully explain the reason of his answering differently as to dissolution of partnership. If the assumption in said interrogatories be true, that he did answer in the first instance, that the partnership was dissolved 18th September, 1856. He has no

books before him; therefore, he makes no statement from memory or otherwise, as to entries in the books of Allen & Stanford; knows nothing more."

The testimony on both sides being thus closed, after argument of counsel, the Court charged the jury as follows:

" The law of partnership on the point in controversy is, that one partner cannot apply the funds of the partnership to the discharge of his own individual debts, so as to bind the other partners, without their consent. The reason is, and it goes upon the ground, that the right of the other parties to the fund, is not divested by its transfer. The fraudulent partner having no authority to dispose of their interest, without their consent, and beyond the scope of the partnership. Whether the money paid was the funds of the partnership or not, is for the jury to determine from the evidence. If the defendant, Stanford, knew of the application of the fund, and found his partner charged with it on the firm books, and did not object to the payment, or that he assented to it, or approved it, or acquiesced in it, without complaint, (and the jury must determine these facts from the evidence,) then Stanford would be bound, and have no right to recover the money back. But if, on the contrary, the jury are satisfied from the evidence, that the money paid was the funds of the partnership, and that Allen applied it to the payment of his own debts, without the knowledge or consent of Stanford, and that Stanford did not in any way approve it or assent to it afterwards, then they ought to find the same paid as credit, to be placed upon the notes, and find the balance due on the three notes, principal and interest, with costs." *Rogers and Son vs. Batchelor et al.* See 12, *Peters.*

To which charge the plaintiffs, by their attorneys, excepetd, and assign the same as error; because they insisted before the Court, and so requested him to charge, that the plaintiffs, Wiley, Banks & Co., must have partici-

pated in the fraud alleged against Allen, or have had some notice, express or implied, that the money was partnership money, or at least, that the circumstances attending the payment to them or their counsel, Nathan L. Hutchins, Esq., of the money in dispute,, must have been such as to put them upon enquiry as to whether or not said money belonged to the firm or to Allen individually. To which refusal to charge, and to the charge, so far as it is in conflict with the principle that Wiley Banks & Co. must be shown to have had notice, or at least reason to suspect, so as to be put upon enquiry, that the payment was made in partnership funds, the plaintiffs, by their counsel, excepted and now except, and assign the same as error.

E. &. W. J. PEEPLES; and JAMES JACKSON, for plaintiffs in error.

STANFORD, *in propria persona, contra.*

*By the Court.*—LUMPKIN J. delivering the opinion.

Allen & Stanford being partners in merchandise, Allen draws eight hundred and forty dollars in money from the store, charges himself with it on the cash-book, and applies it in payment of an individual note which he owes to the plaintiffs, Wiley, Banks & Co.; and the question is, whether they can be compelled to allow this amount to go as a credit upon the firm debt of Allen & Stanford, owing them, unless they, or their agent, Judge Hutchins, had notice, express or implied, that the $840 was partnership money; or, at least, unless the circumstances attending the payment were such as to put them upon enquiry as to the rightfulness of this payment.

In support of the affirmative of the foregoing proposition, the defendant in error relies on the case of *Rogers against Batchelor*, (12 *Peters' Rep.* 221,) where it was held, that the funds of a partnership cannot be rightfully applied by one

of the partners, to the discharge of his own separate, pre-existing debts, without the express or implied assent of the other parties ; and further, that it makes no difference in such a case, that the separate creditor had no knowledge, at the time, of the fact of the fund being partnership property.

The difference between the payment out of *money* belonging to the firm, and the appropriation of the property or effects of the partnership, does not seem to have been taken, or occupied the attention of the Court in that case. One of the authorities cited to sustain the judgment of the Court, was that of *Dob & Dob vs. Halsey*, (16 *Johns. Rep.* 34,) where the Supreme Court of New York held, that if one partner delivers partnership property to a third person, who receives it, *knowing* that it is partnership property, in payment of his individual debt, in an action by the partners against the individual creditor of the individual partner, for the price of the goods, the debt of the one partner is not a defence or set-off against all the partners.

Of course not. For, in the first place, the title of the partners had not been divested by the individual appropriation of their property by one of them. And, in the second place, the separate creditor received the partnership property, *knowing* it to be such. He participated, therefore, in the fraud attempted to be practiced by the individual partner upon his associates.

I would respectfully submit, that the decision in *Johnson* is not a precedent for that in *Peters*. And further, that in every case quoted by Judge Story, both in maintenance of his judicial opinion and the same doctrine enunciated by him in his *Treatise on Partnerships*, the party knew, or had, at least, good reason to believe, that he was taking from his debtor the joint funds of the co-partnership.

But the main purpose for which I adverted to the case of *Dob and Halsey* was, to show that the New York Court comprehended the distinction between a payment in money and property. Spencer says : " Had Moore paid the defendant

the debt due to him, in money which he had taken out of the partnership fund, it would have presented a different question. *Such a payment would have been valid, in the absence of all proof that the defendant knew that the money of the firm had been thus misapplied.* In such a case, there would be ground for presuming that the transaction was fair, and that the debt had been paid out of the private funds of the partner indebted."

But the principle decided in the leading case of *Miller vs. Pace,* (1 *Burrows,* 452,) and reviewed in *Smith's Leading Cases,* 1 *vol.* 356, introduces a new element into this discussion. The payment by Allen to Hutchins, as the agent of Wiley, Banks & Co., was in money, either coin or bank bills. If the transaction was *bona fide,* and the record concedes that it was, can the money be recovered back? According to *Miller and Pace,* which is considered settled law, it would seem that it could not be. Had Allen robbed the till of the store, or of the store of any one else, and applied the money to the discharge of his debt, *in favor of currency,* neither his partners, nor any other owner, from whom it had been stolen, could recover it back, unless some collusion or unfair dealing could be shown. It was said by Lord Mansfield, in delivering the opinion of the Court of King's Bench, in *Miller and Pace,* that the general course of business, and the consequences to trade and commerce, which would be much incommoded by a contrary determination, that money never should be followed into the hands of a person who, *bona fide,* took it in the course of currency, and in the way of business.

Unless, then, it can be shown that the payment was not only covinous on the part of Allen, who paid his private debt with the money of the firm, without the consent or knowledge of his partner, but also, that the separate creditor, or his agent, took the money under circumstances which were calculated to apprise him that Allen had no right to this

money, the defendants below must fail in their case.    Perhaps, one of the circumstances calculated to awaken suspicion, and excite enquiry, would be, the insolvency of Allen, provided it existed at the time, and was known to Wiley Banks & Co., or their agent.

Judgment reversed.