## 21112.  YANCEY BROTHERS INC. *v.* AMERICAN SURETY COMPANY OF NEW YORK.

DECIDED AUGUST 29, 1931.

*William J. Davis Jr.,* for plaintiff in error.

*Jones, Evins, Powers & Jones,* contra.

JENKINS, P. J.   This was a suit by Yancey Brothers against the American Surety Company of New York, surety on a contractor's bond, given under the provisions of the act of 1916 (Ga. L. 1916, p. 94; Michie's Code (1926), § 389 (1) et seq.), for certain machinery, and work and parts furnished in repairing other machinery, used by the defendant's principal in the construction of certain school buildings in the City of Atlanta, for the performance of which contract between the contractor and the City of Atlanta the bond sued on was given.   The suit was in four counts, for items furnished in connection with the construction of four separate school buildings, a separate bond having been given by the contractor, with the defendant as security, under each contract. On the trial the case was submitted to the trial judge in the municipal court under an agreed statement of facts, by which it was stipulated that the itemized accounts attached to the various counts of the petition were correct; that the items sued for "are items for contractor's equipment and for labor and repairs on contractor's equipment sold and furnished by the plaintiff to Palmer-Spivey Construction Company, contractors, during the time it was engaged as such contractor in the construction of the school

buildings referred to in the petition. None of the items went into or formed a part of the school building, but they consisted solely, as above stated, of contractor's equipment and repairs to such equipment, which said equipment was designed and suitable for and intended to be used by the contractor from job to job." It was further stipulated that the City of Atlanta had failed to bring suit on the bond within ninety days from the completion and acceptance of the buildings, and that demand for payment had been made upon the defendant surety and payment refused.

The trial judge in the municipal court found in favor of the plaintiff in the full amount sued for. This judgment was reversed by the appellate division of the municipal court, and the plaintiff here excepts to the judgment of the superior court overruling a certiorari brought to review the ruling of the appellate division.

The act approved August 19, 1916 (Ga. L. 1916, p. 94), under which the bond sued on in the instant case was given, provides, in substance, that a contractor entering upon a contract with the State, a county, municipal corporation, or any other public board or body thereof, for the doing of any public work, shall give bond, with good and sufficient surety, for the use of the obligee and "of all persons doing work or furnishing skill, tools, machinery or materials under or for the purpose of such contract, conditioned for the completion of the contract in accordance with its terms, for saving the obligee free from all costs and charges that may accrue on account of the doing of the work specified for the payments as they become due of all just claims for work, tools, machinery, skill and materials furnished by persons under, or for the purpose of, such contract, and for a compliance with the laws appertaining thereto." The act further provides, by section 4, that any person entitled to the protection of such bond may maintain an action thereon, and in case an action is not filed on the bond by the obligee therein within ninety days after the completion of the contract "then the person doing work or furnishing skill, tools, machinery or materials to the contractor for said public building or public work shall, upon application therefor, and furnishing to the official who has the custody of said bond an affidavit that labor, skill, tools, machinery or materials for the prosecution of such building or work has been supplied by him and payment for which has not been made, be furnished with a certified copy of said bond, upon

which he shall have a right of action against said contractor and the surety on said bond, or against either of them, and he shall have the right to prosecute the same to final judgment and execution."

The question involved in the instant case is whether or not the terms "labor, skill, tools, machinery and materials," as used in the act of 1916 and in the bond sued on, embrace the items sued for in the instant case, which consist, as shown by the agreed statement of facts, of contractor's equipment and labor and repairs on contractor's equipment sold and furnished by the plaintiff to the contractor during the time it was engaged in the performance of the work. One of the items going to make up the account sued on was a concrete mixer, sold at the price of $750, the aggregate of all the items set out in this particular count of the petition pertaining to one particular building contract being $883.75, and the account set forth in this court showing a balance of $393.90. All of the other items set forth by the four counts of the petition, each count pertaining to one particular building contract, appear to be charges for labor and parts and materials furnished in making repairs to the equipment and machinery used by the contractor in doing the work.

Upon the exact question here involved there appears to have been no former decision in this State. The case, therefore, turns upon the construction of the act of 1916 referred to. It will be noted that the provisions of this act are somewhat broader than the previous statute upon this subject, which provided, in general terms, for the protection of any person supplying the contractor with "labor or material or both." Ga. L. 1910, p. 86; Park's Code (1914), § 389(b).

In 67 A. L. R. 1232, following the report of the case of Clifton v. Norden, 178 Minn. 288 (226 N. W. 940), there is an exhaustive note upon the subject here dealt with, which embodies a collection of citations from various States, and the general rule as stated by the text-writer is as follows: "Although there is a great apparent conflict, under what appears to be the rule followed by the majority of the courts the statutory contractor's bond does not cover labor and materials expended in the repair of a contractor's or subcontractor's machinery, tools, or equipment, because such labor and materials do not enter into the completed structure, or because the

contractor or subcontractor is expected to furnish his own working establishment as a part of the undertaking for which he is compensated. This holding has been made without any effort to distinguish between the nature of the repairs as major or incidental, and under statutory requirements similar in their terms. An examination of the cases cited in support of this view discloses that in most, if not all, cases, the provisions of the statute restrict the purpose for which bond must be given to the protection of the obligee and persons furnishing labor or materials.

"Another group of cases, under apparently broader statutes, permit recovery upon a contractor's bond for repairs made upon machinery or implements, without drawing any distinction between incidental and general repairs; other cases, under similar statutes, take the view that where the repair is on such a major scale that it adds materially to the contractor's general plant or equipment, so that most of the benefit therefrom is available for other contracts, the claim does not support a recovery against the contractor's surety." 67 A. L. R. 1238, 1240.

In Clifton v. Norden, supra, the Supreme Court of Minnesota held: "While under the rule of Miller v. American Bonding Co., 133 Minn. 336 (158 N. W. 432), there may be a recovery on a public contractor's bond for material and labor used in incidental and current repairs of the contractor's machinery, there can be none for major repairs involving replacements of old with new parts, in the absence of proof that the new parts were consumed in the work covered by the bond. The determinative distinction is between items going into the work, or specially contributing to its execution and nothing else, and those properly chargeable to the plant and equipment of the contractor, and available not only for the pending work, but for others as well." The Minnesota statute involved in this decision is substantially the same as the Georgia act of 1916 cited above, and provides for a bond to be given by a contractor on public works "for the use of the obligee and of all persons doing work or furnishing skill, tools, machinery or materials, or insurance premiums or equipment or supplies for any camp maintained for the feeding or keeping of men and animals engaged under, or for the purpose of, such contract."

In *Southern Surety Co. v. Williams*, 36 *Ga. App.* 692 (137 S. E. 861), this court held that an employee of a contractor who had

given bond under the act of 1916 was not engaged in doing work "under and for the purpose of" the contract, while winding up the affairs of his employer, after the public work had been completed, in collecting and looking after machinery and "shipping it to the next work they were going to do," and that such an employee could not recover against the surety on the contractor's bond on account of compensation earned while thus engaged.

It is insisted in the instant case, by counsel for plaintiff in error, that the term "machinery," as used in the act of 1916 is broad enough to cover, and does cover, machinery purchased by the contractor for use in carrying out the contract. We think the term "machinery," as used in the act does not mean machinery forming a part of the contractor's equipment to be used on any and all jobs which he might thereafter undertake. If the contention of the plaintiff in error in this respect is correct, it might well happen that the surety on a contractor's bond would be held liable for the purchase-price of machinery as permanent equipment in the conduct of the contractor's general business, costing as much or even far more than the contract price for the particular construction. It is easy to see that such a literal and unlimited construction might include the purchase of steam-shovels, trucks, and other expensive and permanent equipment far exceeding the entire cost of the particular building upon the construction of which they might first be employed. In such event, if the contention of plaintiff in error is correct, the surety on the bond would be liable to the person selling such equipment to the contractor, at least to the amount of the bond. Such, manifestly, could not be the intention of the legislature. We do think, however, that the language of our statute is broad enough to cover, and does cover, incidental and current repairs to the contractor's machinery which contribute only to the execution of the particular contract, and do not amount to substantial additions to the contractor's equipment, and that the rule adopted by the Supreme Court of Minnesota is correct, and should be followed. Such would seem to be the purpose and intent of the act of the General Assembly of 1916.

It follows, from what has been said, that the general demurrer interposed in the instant case was properly overruled; but since the plaintiff was permitted by the trial judge of the municipal court to recover on account of machinery furnished to the contractor, as

well as on account of labor and materials furnished in repairing the equipment, the appellate division of the municipal court properly reversed the judgment of the trial court overruling the defendant's motion for a new trial, and the judge of the superior court did not err in overruling the certiorari. On another trial the plaintiff should recover for items in the account coming within the rule here announced, but not on account of the other items set forth. *Judgment affirmed. Stephens and Bell, JJ., concur.*