**COLONIAL OIL CO. v. UNITED STATES GUARANTEE CO.**

No. 95.

District Court, S. D. Georgia,, Savannah Division.

July 24, 1944.

Judgment Affirmed Nov. 14, 1944.

546

Lawton & Cunningham (by A. R. Lawton), of Savannah, Ga., for plaintiff.

Hoyt H. Whelchel, of Moultrie, Ga., for defendant.

LOVETT, District Judge.

This is an action against the surety on a statutory highway contractor's bond to recover the balance due for gasoline and other petroleum products furnished by the plaintiff to F. M. Jones and Leo T. Barber, co-contractors, on the order of F. M. Jones. The bond was furnished under the provisions of Ga.Code of 1933, § 23-1704 et seq., and includes the obligation to pay "all just claims for work, tools, machinery, skill and materials furnished by persons under, or for the purpose of, such contract."

The first defense is in the nature of a general demurrer. It is that the petition fails to state a claim against the defendant upon which relief can be granted because it fails to allege that the products sued for were used and consumed on the project covered by the bond.

The second defense denies that the material in question was furnished and that the defendant is indebted to the plaintiff for any material whatsoever and places the burden of proving these allegations upon the plaintiff.

The third defense is that two payments to the plaintiff, one of $3,000 made by Leo T. Barber on May 3, 1939, and one of $1,500 made by F. M. Jones on July 7, 1939, came from the proceeds of the project covered by the bond and should have been credited to that project but instead were credited by the plaintiff to pre-existing individual debts of F. M. Jones.

The fourth defense is that the same two payments came from the funds of Messrs. Jones & Barber, the principals on the bond, and should have been credited to the account sued on instead of to the individual pre-existing debts of F. M. Jones.

The case is submitted to the court, on the pleadings, a stipulation of facts, and upon plaintiff's request for admissions under Rule 36(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Jury trial was waived.

Mr. Jones was a highway contractor who, since 1935, had been buying from the plaintiff petroleum products for use on jobs on which he had been the sole contractor.

In December, 1938 he was indebted to the plaintiff on jobs in Bryan, Screven and Bulloch counties, Georgia. The Bulloch county debt was nearly paid, but he owed considerable amounts on the Bryan and Screven county jobs. He came to the plaintiff and arranged to buy further supplies for two new jobs which he had in Glynn county, and which jobs are herein referred to as Projects B(1) and D(1). Project D(1) is covered by the bond here sued on. Both projects were for highway construction, and together they formed a continuous stretch of highway. Leo T. Barber was a co-contractor on both jobs, but plaintiff did not know this until nearly a year later.

The plaintiff's deliveries on these jobs to Mr. Jones commenced in January, 1939. The account against Project B(1) has been paid. This suit is to recover the balance due on Project D(1).

In the same month, January, 1939, plaintiff began to press Mr. Jones about the balance due on his Bryan county job, and Jones said he was going to borrow from Leo T. Barber and send plaintiff $1,000. On the last day of that month Jones' individual check for $1,000 drawn against his personal account arrived, and plaintiff applied it against the Bryan County account. No objection has been made to this application. The defenses are concerned with the next two remittances. It is claimed they should have been applied to the Project here sued upon.

In April of that year the same process was repeated. Jones promised to borrow from Barber money to pay the plaintiff for

credit on the Bryan county job. On April 17 Barber wrote that:

"* * * Jones and I have estimates due us on Projects * * * B(1) and D(1), from the State Highway Board of Georgia, aggregating approximately $5,000, *all of which, for work done in March 1939, is due Mr. Jones.* Mr. Jones has requested me to mail you $3,000 of this estimate, as soon as the money is received from the State Highway Board and I have agreed to do this. * * *"

On May 3, 1939, Mr. Barber's check for $3,000 arrived and was applied on the Bryan county account. Plaintiff then advised Jones by mail that the check had been so applied "as per conversation while you were in our office" and requested him to "please advise by return mail if we are not correct." Jones did not reply. The other remittance which it is claimed should have been credited to D(1) was made on July 7, 1939, in the form of Mr. Jones' individual check for $1,500. Plaintiff applied this to the Screven county job and wrote Jones that it had done so. He acquiesced.

The defenses will be considered in the order set out.

The third paragraph of the complaint alleges:

"On the order of F. M. Jones, plaintiff furnished to F. M. Jones and Leo T. Barber gasolene for use on said Project D(1) at the agreed price of $10,287.71. * * * Plaintiff has only been paid a total of $4,494.22, leaving a balance of $5,793.49 still due the plaintiff."

It is not alleged that the material was used on Project D(1), but the defendant has admitted that the bill on which the suit is based correctly states the total charges against both Projects B(1) and D(1) together. The attack on the amount of the account, therefore, is really an attack upon the propriety of the division of the account between the two projects.

Up to November 2, 1939, when Project B(1) was completed, plaintiff had carried on its books a single account against both projects. At that time it became necessary to separate the two. Since all deliveries of gasolene for both projects had been to Jones and since he had been constantly on the job, and Barber had been there only occasionally, plaintiff felt that Jones was the only one who could make the separation. On April 2, 1940, he and plaintiff's treasurer, Jarrell, went over the account item by item separating it into two accounts and charging $4,845.60 of the total of $13,510.90 to D(1). This $4,845.60 is included in the account now sued on. It is defendant's contention that it is erroneously included because it is not proved that it was used in Project D(1) and not used in Project B(1), and that that amount should be deducted from the $5,793.49 sued on, leaving a liability of $947.89.

It is true that if defendant had arbitrarily set aside this sum as applicable to D(1) it would not be recoverable in the absence of proof that the materials represented by that sum were used in that project. In this case, however, the application of this sum to D(1) by Jones, defendant's principal, is binding upon the defendant. The general rule is:

"In cases of suretyship, an admission of the principal, when made in good faith, in connection with the obligations and duties to which the suretyship relates, is competent against the surety, although not to the extent of varying his liability. * * *" 22 C.J., Evidence, Sec. 483; 31 C.J.S., Evidence, § 366; 4 Wigmore on Evidence, 3rd Ed., Sec. 1077.

The evidence does not establish that Jones acted in bad faith, and his action was clearly connected with the obligations and duties to which the suretyship relates because the work covered by the surety contract was still in progress when the accounts were separated. By this division of the accounts Jones only gave the plaintiff the information it might have gotten by inquiring when each delivery was made before B(1) was completed.

It is also true that only those materials going into the work, or specially contributing to the execution of the contract and nothing else, are covered by the bond,[1] and under the law of mechanics' and materialmen's liens it is necessary to allege and prove that the material delivered did actually go into the work on which the lien is claimed. When such a lien is sought to be enforced the claimant is required to preserve its unity against the particular property by ascertaining from the debtor whether payments are from the

---

[1] Western Casualty Security Co. v. Fulton Supply Co., 60 Ga.App. 710, 4 S.E.2d 690; Yancy Bros. v. American Surety Co. of N. Y., 43 Ga.App. 740, 160 S.E. 100.

548

contract covering the particular property and, if they are, he must apply these payments on that particular account and on no other. Williams v. Willingham-Tift Lbr. Co., 5 Ga.App. 533, 63 S.E. 584.

The case stands somewhat differently, however, where, as here, the owner is the State, the materialman has no lien and the surety is compensated. His right to recover is protected by a statutory contractor's bond. Ga.Code 1933, § 23-1704 et seq. "The purpose of the statute is to protect those who furnish work, materials, etc., in the execution of contracts for public works *to which the mechanic's lien law does not apply.*" (Emphasis added.) Whitley v. Bryant, 59 Ga.App. 58, 200 S.E. 317, 318.

The cases of Motor Supply Co. v. St. Paul Mercury Indemnity Co., 67 Ga.App. 236, 19 S.E.2d 737; St. Paul Mercury Indemnity Co. v. Motor Supply Co., 70 Ga. App. 808, 29 S.E.2d 640, involved these same contractors. It was an action by the materialman against the surety on Project B(1). Recovery was allowed on the theory that the percentage of the total cost of the projects applicable to B(1) must also represent the percentage of the total materials used on that project. The court said in 67 Ga.App. at page 239, 19 S.E.2d at page 739: "The fact that the petition does not identify the particular and specific tools and materials furnished and used on the work under the contract involved in this case does not render it subject to general demurrer." Recovery in the instant case is not sought on any percentage formula but on the division made by Jones, which is binding on the defendant. The Motor Supply case is controlling, however, in so far as it holds it unnecessary to identify the particular and specific materials going into the project sued on. Moreover, the pleadings may be amended to conform to the proof (stipulated facts). Rule 15(b), Federal Rules of Civil Procedure.

The contention of the second defense that the burden is upon the plaintiff to prove that the materials sued for were used on the project covered by the bond is answered in the discussion of the first defense and will be given no further consideration.

The third and fourth defenses concern the defendant's right to have credited to the account covering Project D(1), the subject of this suit, two payments of $3,000 and $1,500, respectively, which plaintiff actually credited to other pre-existing debts owed by Jones. Defendant claims the right to have these payments credited to D(1) because, (third defense) they came from the proceeds of Project D(1), and (fourth defense) they came from the partnership funds of Jones and Barber, principals on the bond.

It is nowhere suggested that the $3,000 payment of May 3, 1939, was derived from the proceeds of Project D(1) alone. Barber's letter in which the check was inclosed stated it was from the proceeds of both projects, D(1) and B(1). It could not have been from the proceeds of D(1) alone because on May 3rd, when the $3,000 was received, the Highway Board had only passed for payment sums on D(1) totalling $2,827.35. It is further improbable that either Barber or Jones should have intended this $3,000 to be applied on D(1) because as of April 1, 1939, the date of the last bill sent by plaintiff, the total bill, less certain credits, against both B(1) and D(1), was $2,042.75.

Barber's letter of April 17, 1939, inclosing the check did not indicate that it came from the funds of Jones and Barber. Rather it indicated that it came from the private funds of Jones. The letter stated $5,000 was owing by the Highway Department, "all of which * * * is due Mr. Jones." This being the case, the plaintiff had the right to follow Jones' directions and apply the payment to the Bryan county job, and Jones ratified this application when he failed to reply to plaintiff's letter of May 3rd telling him what had been done. See Ga.Code 1933, §§ 38-120, 38-409.

In defendant's brief the point is made that since plaintiff had notice that this payment came from the proceeds of B(1) and D(1) together, it should have been applied to those projects. Even if $3,000 had been due on both projects together, however, it would not follow that, in the absence of knowledge that the funds were partnership assets, the plaintiff was bound to apply them in any particular way.

In the case of Farnsworth & Co. v. Electrical Supply Co., 5 Cir., 112 F.2d 150, 130 A.L.R. 192, it was held that when payment is made to a furnisher of materials who knows the source of the payment, there is a duty to apply the money to the payment of those materials. That case, however, is distinguishable on its facts, the materialman knew the source of the funds, the

contractor was known to be financially shaky, and the action was brought under a federal and not a state statute.

In cases of public work of this kind the materialman is at a disadvantage in tracing the source of the funds received by the contractor. Especially so, if mingled with his own funds in a bank. On the other hand, a compensated surety may exercise some control over the disposition of progress payments to the contractor if he chooses to do so.

 The rule that a surety is favored in the law does not ordinarily apply to compensated sureties. 50 C.J., Principal and Agent, Sec. 133.

"In a transaction like this, the surety had ample facilities for protecting itself. It could have reserved and exercised a surveillance over the disbursement of the proceeds of the contract for the performance of which it is surety. Those furnishing labor and materials could not do so. They have a right to rely upon the bond to protect them against such contention here made under the statute and conditions of the bond." United States v. Mittry Bros. Const. Co., D.C., 4 F.Supp. 216, 220.

The contention referred to was much the same as that of the defendant in the instant case.

■ To sustain its contention that Jones' check for $1,500 on his private bank account (July 7, 1939) was taken from proceeds of Project D(1), defendant relies on the fact that on June 30th, one week before the check was drawn, Barber sent Jones $4,067.50 from Project B(1) and $2,576.82 from Project D(1) which Jones mingled with his own private funds. The conclusion that the $1,500 came from D(1) is a non sequitur. It is more logical to assume that this money did not come from D(1). It is equally logical to conclude that the payment came from Jones' private funds and not from the funds of Jones and Barber. The evidence is ominously silent on the whole subject. Since there was no direction as to how the check should be applied, plaintiff had the right to apply it as it saw fit,[2] and Jones ratified this application when he failed to reply to plaintiff's letter advising him what had been done.[3]

■ The evidence in this case does not clearly establish a partnership between Jones and Barber, nor does it show that any of the funds involved were their joint funds. They were co-contractors, but each was to do certain work and pay the expenses and receive the proceeds of the work. One seems to have built the bridges, the other the paved roads. However, even if there were a partnership, the two payments with which we are concerned were made under circumstances that would indicate to the plaintiff they came from the individual assets of Jones and not from the assets of Jones and Barber. The Georgia law, by which this court is bound, is clearly established in Wiley v. Allen, 26 Ga. 568:

"If one partner take the money of the firm, and apply it to the discharge of his separate debt, without the assent or knowledge of the other member, it cannot be recovered back, unless the separate creditor knew, or had reason to believe, that at the time of the payment it was partnership money."

Defendant's contention that the Wiley-Banks case is distinguishable from this case, in that there money and here checks are involved, seems tenuous to me.

Let a judgment be presented on notice.