### UNITED STATES GUARANTEE CO. v. COLONIAL OIL CO.

No. 11130.

Circuit Court of Appeals, Fifth Circuit.

Nov. 14, 1944.

---

Hoyt H. Whelchel, of Moultrie, Ga., for appellant.

A. R. Lawton, Jr., of Savannah, Ga., for appellee.

Before HOLMES, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

In the court below appellee sued appellant, as surety on a public contractor's bond, for a balance alleged to be due by F. M. Jones and Leo T. Barber, co-contractors, for gasoline and oil furnished by appellee on the order of F. M. Jones.

The bond was furnished under the provisions of Georgia Code Ann.1933, Section 23-1705 et seq., to secure performance of the contract entered into between F. M. Jones and Leo T. Barber and the State Highway Board of Georgia, and to secure "the payment as they become due of all just claims for work, tools, machinery, skill, and materials furnished by persons under, or for the purpose of, such contract."

The case was tried to the court without a jury, and, from a judgment against it in the amount sued on, appellant prosecutes this appeal.

Two questions are before us for consideration:

1. Was it necessary for the appellee to allege and prove that the materials sued for were used and consumed in the completion of the contract covered by the bond sued on, or that the materials went into or contributed to the execution of the contract and nothing else?

2. Did appellee have the right to credit a remittance of $3,000 from the proceeds of the project covered by the bond to a pre-existing debt of Jones, one of the co-contractors, which debt was unrelated to the source of payment?

Appellee sued for materials furnished at the agreed price of $10,287.71, upon which there had allegedly been paid $4,494.22, leaving a balance of $5,793.49. The facts, largely stipulated, are as follows: On or about December 2, 1938, F. M. Jones and Leo T. Barber entered into a contract with the State Highway Board of Georgia for

construction of part of a State Highway project in Glynn County, Georgia, referred to in this litigation as Project D-1, and gave a bond with appellant as surety. At about the same time, the same principals entered into another contract with the State Highway Board of Georgia for the construction of another part of the same highway, referred to in this litigation as Project B-1, and gave a bond with the St. Paul Mercury & Indemnity Company as surety. The two projects, B-1 and D-1, were contiguous and formed when completed a continuous stretch of highway.

Appellee charged all deliveries on Projects B-1 and D-1, until April 2, 1940, to F. M. Jones. The account did not designate against which project charges were made, all charges being made against both projects. The total account between January 10, 1939, when work on the two projects was started, to November 2, 1939, when work on Project B-1 ceased, was $13,510.90.

Gasoline was delivered into a single tank used by the contractor, Jones, from which it was pumped into equipment employed on both projects. Oil and grease bought from appellee were likewise used in equipment which was employed on both projects. Neither plaintiff nor defendant nor Jones nor Barber knew how much of the gasoline, oil, and grease bought from the appellee by Jones was actually consumed in work on each of the projects prior to November 2, 1939, when work on Project B-1 was completed. All materials purchased by Jones after November 2, 1939, were used on and went into the construction of Project D-1.

On April 2, 1940, Jones and a Mr. Jarrell, an employee of appellee, had a conference at which they went over the account as it then stood on appellee's books against both projects. Jones divided these charges between the two projects, allotting $4,845.60 of the total charges to November 2, 1939, to Project D-1.

Appellant contends that under Georgia law it is only those materials going into the work or especially contributing to the execution of the contract that are covered by the bond; that, in order to make out its case, it was necessary for appellee not only to allege and prove that it "furnished to F. M. Jones and Leo T. Barber gasoline and oil for use on said project," but further to allege and prove that said materials went into the work or especially contributed to the execution of the contract covered by the bond sued on and nothing else; and this appellee had failed to do.

The objection to the pleading is in the nature of a general demurrer, and, we think, has been disposed of by the Court of Appeals of Georgia in Motor Supply Co. v. St. Paul Mercury & Indemnity Co., 67 Ga.App. 236, 19 S.E.2d 737, 739. In that case Motor Supply Company had sold Jones and Barber various items for use in vehicles working on Project B-1 and D-1. Suit was brought against Jones and Barber and the St. Paul Mercury & Indemnity Company, surety for Jones and Barber on Project B-1, for a percentage of the total bill for materials and supplies furnished and consumed on both projects, on the theory that such percentage had been used on Project B-1. The trial court sustained a general demurrer on the ground urged here, namely, that the petition did not show that the materials had been consumed on Project B-1. On appeal, the Court of Appeals reversed the trial court saying:

"It does not appear that the plaintiff is seeking to recover for any materials used on his highway work except that portion used to complete the contract involved here. The fact that the petition does not identify the particular and specific tools and materials furnished and used on the work under the contract involved in this case does not render it subject to general demurrer. There is nothing in Yancey Brothers Inc. v. American Surety Company, supra [43 Ga.App. 740, 160 S.E. 100], to the contrary of what is now held in the present case. If on the trial it appears that any of the tools, machinery, and materials furnished by the plaintiff were not used in incidental and current repairs to the equipment and machinery of Jones and Barber, under the contract here involved; but were used elsewhere, or were such as to amount to substantial additions to the equipment of these defendants, and involved major repairs and replacements of old with new parts, the plaintiff can not recover therefor under the rule laid down in the Yancey case."

The total amount of materials furnished by appellee to Jones and Barber for use on Project D-1 was $10,287.71, made up of materials furnished after November 2,

1939, in the amount of $5,442.06, which admittedly went into Project D-1, and of charges amounting to $4,845.60, representing items designated by Jones as chargeable to Project D-1 out of the total charges of $13,510.90 for materials delivered for use on both projects prior to November 2, 1939.

When F. M. Jones, a principal who was in charge of the work, designated from items charged against both projects which of those items should be charged against Project D-1, we think, as did the court below, that appellee made out a prima facie case for recovery of the $4,845.60 against the surety.[1]

It is true that in the stipulation it was set forth that neither appellee nor defendant nor Jones nor Barber knew how much of the gasoline, oil, and grease bought from the appellee by Jones was actually consumed in work on either one of these projects prior to November 2, 1939, when work on Project B-1 was completed. We take this statement, however, to mean that these parties did not know the "exact" amount of the gasoline, oil, and grease bought from the plaintiff which was used on each project. Since Jones, who admittedly was constantly on the job, apparently in good faith designated the items to be charged to Project D-1 from the total charges against both projects, it must be inferred that he was guided by his knowledge of the two projects and the work done on each, and from such knowledge estimated the amount of gasoline, oil, and grease used and consumed on Project D-1.

The Motor Supply Company case, supra, went to the Court of Appeals of Georgia a second time and is reported in 70 Ga.App. 808, 29 S.E.2d 640, 642. On the second appeal the court said:

"The evidence showed that the materials and supplies listed on the itemized account introduced in evidence were put on road machines, trucks, tractors and vehicles used on the three projects and that the trucks and other vehicles were used on all the projects interchangeably as they were being carried out simultaneously, that the parts, materials and supplies were used in incidental and current repairs to the machinery and equipment of Jones and Barber, that the parts and materials furnished said contractors by the plaintiff were for minor repairs which were consumed in their use on the three jobs combined. * * * The plaintiffs in error contended, when the case was here on demurrer, that the plaintiff was not entitled to recover because the items sued for were not used or consumed *solely* on the project covered by the bond sued on. The contention of the plaintiffs in error in that respect was adjudicated adversely to them by the former decision of this court in this case, where it was held there could be a recovery *on a percentage basis in this case*. It appears from the evidence that the materials and supplies sued for were used and consumed on the three contiguous road projects and the evidence supported the allegations of the petition as to the percentage thereof that was used and consumed on the projects covered by the bond. There was evidence that the three projects consisted of the same type of work and that the amount of work done by the various trucks and machines on one job would be the same as on the other, varying only in the size of the job."

It seems clear from a reading of the Motor Supply Company cases that no attempt was made to prove that specific materials went into and were consumed on Project B-1. The proof was that both Project B-1 and Project D-1 "consisted of the same type of work and that the amount of work done by the various trucks and machines on one job would be the same as on the other, varying only in the size of the job." Upon such proof, the plaintiff recovered.

In the case before us, Jones apparently divided the common account for gasoline and oil used and consumed on Project B-1 and Project D-1 between the two projects, charging certain items to each. It was impossible for him or for anyone else to have specifically identified gasoline and oil going into each project. We think the opinions of the Court of Appeals of Georgia in the Motor Supply Company cases are controlling and support the proposition

---

[1] Cf. Stephens v. Crawford, 1 Ga. 574, 578, 44 Am.Dec. 680; Dobbs v. Justices of Inferior Court of Murray County, 17 Ga. 624, 630; Bailey v. McAlpin, 122 Ga. 616, 50 S.E. 388; Chicago Portrait Co. v. O'Neal, 6 Ga.App. 425, 65 S.E. 161; American Surety Co. v. Smith, 55 Ga.App. 633, 191 S.E. 137; 31 C.J.S., Evidence, § 366, p. 1146.

that to make a prima facie case it was only necessary to show that the principal, with knowledge of the work done on each project, in good faith estimated the amount of gasoline and oil in dollars and cents that was chargeable to Project D-1.

We find nothing in the record to justify a finding that Jones acted in bad faith in directing the application of $4,845.60 of the total bill to Project D-1; hence, we think his action in making the application is binding on appellant.

■ "In cases of suretyship an admission of the principal, when made in good faith, in connection with the obligations or duties to which the suretyship relates, *is competent* against the surety, although not to the extent of sharing his liability or of determining the right of several sureties as between themselves." 31 C.J.S., Evidence, § 366, p. 1146.

■ The Georgia cases cited by appellant holding that a materialman must prove that the materials furnished went into the work are, in the main, cases applying the law which protects a property owner from a materialman's lien. There can be no lien on state property, hence, there is no necessity for proving that its property has been improved by the materials furnished. Under the statute, public bonds are given for the protection of materialmen and the obligation of the bond is for the payment "of all just claims for * * * materials *furnished* by persons under or for the purpose of such contract."

"The purpose of the statute is to protect those who furnish work, materials, etc., in the execution of contracts for public works to which the mechanic's lien law does not apply." Whitley v. Bryant, 59 Ga.App. 58, 200 S.E. 317, 318.

As appellant made no attempt to rebut appellee's prima facie proof, we think appellee made out its case.

■ Appellant contends that the $3,000 payment under date of May 3, 1939, involved in the second question before us, was paid from funds which came from proceeds from Project D-1 or from partnership funds of the principals Jones and Barber, and, consequently, that appellee had no right to apply the $3,000 to the credit of a pre-existing debt due it by Jones. The $3,000 was received by appellee in a check enclosed in a letter from Barber in which it was stated that it was from the proceeds of both projects and represented an amount due Jones. At the time of the remittance, the total bill due appellee on both projects was $2,042.75. The court below found from the evidence, which was conflicting:

1. That the evidence does not clearly establish the existence of a partnership between Messrs. Jones and Barber;

2. That the evidence does not show that any of the funds paid to appellee and by it credited to the individual account of Mr. Jones were the joint funds of Jones and Barber;

3. That the payment of $3,000 was not and could not have been derived from the proceeds of Project D-1 alone, and that it was improbable that either Jones or Barber intended that said payment should be applied against Project D-1;

4. That said payment was made under circumstances that would indicate to appellee that it came from the individual assets of Jones and not from assets of Jones and Barber.

■ As these findings are supported by substantial evidence, we may not disturb them.[2]

"In a transaction like this, the surety had ample facilities for protecting itself. It could have reserved and exercised surveillance over the disbursement of the proceeds of the contract for the performance of which it is surety. Those furnishing labor and materials could not do so." United States for Use and Benefit of Belmont v. Mittry Bros. Const. Co., D.C., 4 F.Supp. 216, 220.

■ "At common law, and under statutes declaratory thereof, the rule that the surety is a favorite of the law and that his contract must be strictly construed does not apply to surety companies organized to make bonds or undertakings for a profit, or to a compensated surety." 50 C.J., Principal and Surety, Sec. 133, note 83.

"If one partner take the money of the firm, and apply it to the discharge of his separate debt, without the assent or knowledge of the other member, it cannot be recovered back, unless the separate creditor knew, or had reason to believe, that at the time of the payment it was part-

---

[2] Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

nership money." Wiley v. Allen, 26 Ga. 568.

We find no reversible error in the judgment appealed from, and it is accordingly affirmed.