**SIM'S CRANE SERVICE, INC.,**
**Plaintiff-Appellant,**

v.

**RELIANCE INSURANCE COMPANY,**
**Defendant-Appellee.**

No. 81–7512
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 1, 1982.

Wilson & Trotter, William A. Trotter, III, Augusta, Ga., C. Elmon Gatlin, Tampa, Fla., for plaintiff-appellant.

John M. Tatum, Savannah, Ga., for defendant-appellee.

Before RONEY, KRAVITCH and CLARK, Circuit Judges.

**PER CURIAM:**

The issue in this case is whether repair costs on a crane damaged in a construction accident are covered by a performance and payment bond. The district court, 514 F.Supp. 1033, held the bondsman did not have to pay for such repairs. We affirm.

A subcontractor on an apartment building construction project leased a crane from plaintiff Sim's Crane Service. The crane was damaged at the job site as a result of alleged negligent operation by one of the subcontractor's employees. Sim's repaired it, and sued for both rent and repairs on the contractor's performance and payment bond written by defendant Reliance Insurance Company. On cross-motions for summary judgment, the district court granted Sim's judgment for rental fees, but granted the defendant a judgment on the claim for the repairs. Sim's appeals the judgment on repair costs, contending that summary judgment should have been granted in its favor.

The decision turns on whether the bond, which covers "repairs on machinery ... consumed or used in connection with the construction of such work ...," includes major repair costs required as the result of the subcontractor's alleged negligence. We agree with the analysis and conclusion of the district court set forth in an extensive opinion which held that the crane rental was covered by the bond, but that repair costs were not. That portion of the opinion dealing with the repair costs is attached hereto as an appendix.

AFFIRMED.

**APPENDIX**

Plaintiff's claim for the cost of repairing a leased crane, allegedly caused by Horn's negligence, presents a different situation. The Georgia lien statute, section 67–2001, does not by its terms permit a materialman's lien for the cost of repairs; in this sense, therefore, plaintiff may not be considered a creditor beneficiary of the obligees. The language of the bond, on the other hand, provides for the payment of all persons furnishing materials for the prosecution of the work provided for in the general contract, including "repairs on machinery." The key inquiry is whether the phrase "repairs on machinery" includes major repair costs necessitated by a subcontractor's negligence or is limited to incidental repair expenses ordinarily incurred during construction.

The Georgia Court of Appeals has addressed this issue in the context of a public contractor's statutory surety bond. In *Western Casualty & Surety Co. v. Fulton*, 60 Ga.App. 710, 712, 4 S.E.2d 690, 691 (1930), the court recapitulated the general rule:

[W]hile there may be a recovery on a public contractor's bond for material and labor used in incidental and current repairs to the contractor's machinery, there can be none for major repairs involving the replacement of old with new parts, in the absence of proof that the new parts were consumed in the work covered by the bond. The determinative distinction is between the items going into the work, or specially contributing to the execution of the contract and nothing else, and those properly chargeable to the plant and equipment of the contractor, and available not only for the pending work but for other work as well.

See *W. J. Bremer, Inc. v. United Bonding Ins. Co.*, 122 Ga.App. 183, 176 S.E.2d 633 (1970); *Yancey Brothers Inc. v. American Surety Co.*, 43 Ga.App. 740, 160 S.E. 100 (1931). Hence, repair costs are recoverable under a statutory surety bond if the repairs were "consumed" in the prosecution of the work covered by the bond, in the sense that they specially contributed to the pending work only and were not of particular use in other unrelated work.

In this case, plaintiff's crane, serial number 35228, was extensively damaged at the job site during construction as a result of Horn's alleged negligence. A substitute crane was provided by Sim's while plaintiff undertook major repair work on the damaged crane. The repairs required the replacement of numerous parts including the upper and lower jib sections, one twenty-foot center section and two ten-foot center sections of the 50 Ton Lorain MC550A crane. Affidavit of M. Vernon Moore, Executive Vice President and Comptroller of Sim's Crane Services, Inc. The total cost of repairs was $23,865.52.

The term "repairs on machinery" appears in the bond condition in an apparently non-inclusive listing of amounts due to persons furnishing materials, which the surety, by the terms of the bond, promises to pay: "amounts due for . . . lubricants, oil, gasoline, coal and coke [and] repairs on machinery." Of course, lubricants, oil, gasoline, coal and coke are incidental items commonly used or consumed by the general contractor or a subcontractor during the prosecution of the construction work and are of utility only for the completion of the project at hand. Clearly, the obligees intended the protection of the surety bond to benefit persons furnishing such materials "consumed or used in connection with construction." Viewed in the context of the bond language, then, "repairs on machinery" should be assigned a similar meaning: incidental items commonly used or consumed by the general contractor or a subcontractor during construction and ordinarily of necessity in completing the work.

Substantial repairs on machinery, not ordinarily incurred during construction, requiring the replacement of essential parts which then may be utilized in other work, may not be equated with lubricants, oil, gasoline, coal and coke used during construction. The terms of the surety bond, therefore, do not indicate an intention to benefit materialmen whose property is damaged as the result of a subcontractor's negligence. Similarly, the surety, in executing the payment bond, did not intend to insure materialmen against the negligence of subcontractors or underwrite a liability policy for subcontractors. To require payment from the surety to lessor materialmen for machinery repair costs, whenever a subcontractor damages the machinery, would unduly enlarge the risk undertaken by the surety for which it was compensated.

Accordingly, summary judgment is granted in favor of defendant on plaintiff's claim for repair costs incurred in repairing crane, serial number 352288.

AFFIRMED.